UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | |
|---|---|
| TRINITY HOMES LLC and BEAZER HOMES INVESTMENTS LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>OHIO CASUALTY INSURANCE COMPANY, AMERICAN EMPLOYERS' INSURANCE COMPANY, ONE BEACON AMERICA INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, and CINCINNATI INSURANCE COMPANY,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)     1:04-cv-1920-JDT-WTL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ENTRY ON PENDING MOTIONS**

**(Document Nos. 162, 167, 170, 179, 188, 208, 209 and 213)**[1]


Plaintiffs Trinity Homes LLC and Beazer Homes Investments LLC (collectively

the "Plaintiffs") have sued the Defendants, alleging breach of their duties under certain

insurance policies.  In the Amended Complaint, the Plaintiffs seek the following relief:

(1) a declaration that certain Defendants are estopped from asserting any defenses to

coverage under the insurance policies; (2) a declaration that the policies issued by

Defendants provide coverage for the damages claims made against the Plaintiffs in

state court litigation; (3) damages to compensate the Plaintiffs for all losses covered

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

under the policies; and (4) damages for the alleged bad faith denial of coverage by certain Defendants.  The Plaintiffs have moved for partial summary judgment, seeking a declaration that Defendants Cincinnati Insurance Co. ("Cincinnati") and Illinois Union Insurance Co. ("Illinois Union") have a several and indivisible duty to defend them against certain underlying lawsuits filed against them in state court.[2]  In response, Illinois Union filed not only an opposition brief, but also a motion to strike certain of the Plaintiffs' filings.  Cincinnati seeks to join Illinois Union's motion.  And in response to the Plaintiffs' Motion for a Protective Order to Stay Discovery, which the court granted on July 6, 2005, Illinois Union moves the court to certify a question for determination by the Indiana Supreme Court, or in the alternative, to certify an interlocutory appeal to the Seventh Circuit Court of Appeals, seeking clarification of what law governs the court's interpretations of its and the other insurers' duty to defend.

## I.    BACKGROUND

The Plaintiffs are in the business of residential real estate development and construction.  The Plaintiffs have presented the Affidavits of W. Mark Berry in support of their motions for partial summary judgment.  According to the affidavits, Mr. Berry is the

---

[2]    Plaintiffs also sought a partial summary judgment against American Employers' Insurance Co. ("American Employers") regarding its duty to defend in the underlying lawsuits and American Employers filed a cross-motion for summary judgment on this issue.  After these motions were fully briefed, a joint motion for voluntary partial dismissal was filed and granted. The court has dismissed with prejudice the claims Plaintiffs and American Employers have or had against each other relating to American Employers's duty to defend the underlying lawsuits and Plaintiffs' claims for bad faith denial of coverage against this defendant.  (Doc. No. 218.) Accordingly, the motions for partial summary judgment regarding American Employers's duty to defend are **denied as moot**.  American Employers's motion to join in Illinois Union's motion to strike also is **denied as moot**.

Vice President of Risk Management for Beazer Homes Corp. and has the "responsibility

for the risk management and insurance programs for Beazer Homes Investments LLC

and Trinity Homes LLC."  (W. Mark Berry Affs. (Doc. Nos. 163 & 168) ¶ 2.)  Mr. Berry

states that Trinity Homes, LLC was acquired by Crossmann Communities, Inc.

("Crossmann") in October 2000, which later in April 2002 was merged into Beazer

Homes Investment Corp., now Beazer Homes Investments LLC ("Beazer").  (W. Mark

Berry Affs. (Doc. Nos. 163 & 168) ¶ 3.)

This case arises from the Plaintiffs' alleged faulty construction of residential

homes, which resulted in water intrusion into the homes.  The homeowners sued the

Plaintiffs in separate state court actions, alleging that as a result of the Plaintiffs'

negligence, moisture penetrated the homes, causing damage to the homes, the

personal property contained therein, and the homeowners and residents.  The suits are:

*Colon v. Trinity Homes, LLC*, Cause No. 29D02-0404-PL-374, in Hamilton County

Superior Court; *Keenan v. Trinity Homes LLC*, Cause No. 29D02-0310-CT-885, in

Hamilton County Superior Court; *King v. Trinity Homes LLC*, Cause No.

29D010303-CT-242, in Hamilton County Superior Court; *McCoy v. Trinity Homes, LLC*,

Cause No. 29D01-0312-PL-1016, in Hamilton County Superior Court; *Phifer v. Trinity*

*Homes, LLC*, Cause No. 29D02-0309-CT-739, in Hamilton County Superior Court;

*Summit v. Trinity Homes*, Cause No. 29D02-0209-PL-763, in Hamilton County Superior

Court; *Hanna v. Trinity Homes, LLC*, Cause No. 49D03-0409-PL-1675 (transferred from

49D06-0405- PL-00896), in Marion County Superior Court; *Nash v. Trinity Homes*,

Cause No. 06D01-0406-PL-202, in Boone County Superior Court; *Bouwkamp v. Trinity*

*Homes LLC*, Cause No. 06C010409-CT-540, in Boone County Circuit Court; *Jolly v. Trinity Homes, LLC*, Cause No. 29D03-0408-PL-771, in Hamilton County Superior Court; *Knabel v. Trinity Homes LLC*, Cause No. 06C010410-CT-597, in Boone County Circuit Court; *Clouse v. Trinity Homes LLC*, Cause No. 06C010411 CT 672, in Boone County Circuit Court; and *Farrow v. Trinity Homes LLC*, Cause No. 06C010412-CT-685, in Boone County Circuit Court.  Trinity is a defendant in each of these 13 underlying lawsuits; Beazer is a defendant in all except *King* and *Summitt*.  Crossmann is not a defendant in any of them.

Crossmann is a Named Insured on a commercial umbrella liability policy issued by Cincinnati, Policy No. CCC4445840.  (W. Mark Berry Aff. (Doc. No. 163) ¶ 4 & Ex. A, Cincinnati Policy.)  This policy was in effect from July 1, 1998, to July 1, 2001, and then renewed for one year from July 1, 2001, until July 1, 2002.  (*Id.* Ex. B.)  Neither Trinity nor Beazer is a Named Insured on the Cincinnati policy.

Crossmann also is a Named Insured on a comprehensive general liability ("CGL") insurance policy issued by Illinois Union, Policy No. OGL-053947.  (Aff. of W. Mark Berry (Doc. No. 168) ¶ 4 & Ex. A, Illinois Union Policy.)[3]  Pursuant to Endorsement Number 1 of the policy, Trinity is a Named Insured on the CGL policy as well.  (*Id.* Ex.

---

[3] Trinity and Crossmann were Named Insureds on an excess policy issued by Illinois Union, in effect December 31, 2001 through May 1, 2002.  Plaintiffs concede that the duty to defend under that policy is not triggered until the limits of the underlying policy have been exhausted, and because it has not yet been exhausted, their motion addresses only the underlying policy.  (Pls.' Mem. Supp. Mot. Summ. J. Ill. U. 19 n.3.)

A, Endorsement No. 1.)  This policy was in effect December 31, 2001, through May 1, 2002.  (*Id.*)  Beazer is not a Named Insured on the Illinois Union policy.

The Plaintiffs contend that upon notification of the underlying lawsuits, they promptly notified their insurers of the various claims contained therein, and demanded that the insurers defend them.  Apparently, several insurers, the Defendants in this action, refused.  In response, the Plaintiffs filed this action, seeking, *inter alia*, a declaratory judgment that the Defendants have a several and indivisible duty to defend and indemnify them with respect to the underlying lawsuits.

## II.   MOTION TO STRIKE

Preliminarily, the court must decide what materials it may consider in ruling on the pending motions for summary judgment.  Along with their reply briefs in support of their motion for partial summary judgment, the Plaintiffs submit the six-page Supplemental Affidavit of W. Mark Berry (Doc. No. 205), the Vice President of Risk Management for Beazer.  As stated, Mr. Berry is responsible "for the risk management and insurance programs for Beazer . . . and Trinity."  (Suppl. Aff. Berry ¶ 2.)  Attached to the affidavit, which was tendered to the court well after the Defendants had responded to the summary judgment motions, are 190 pages of newly-disclosed exhibits.

Illinois Union seeks to strike those exhibits, arguing they constitute inadmissible hearsay.  It also seeks to strike Mr. Berry's supplemental affidavit, contending that it purports to introduce facts outside the allegations of the underlying pleadings in contravention of the magistrate judge's July 6, 2005, four corners ruling.  Illinois Union

5

further contends that the affidavit was untimely filed, consists of conclusions rather than evidentiary facts, contains legal opinions that Mr. Berry is not qualified to offer, and is based on the inadmissible exhibits.  Cincinnati seeks to join the motion to strike.

In the magistrate judge's July 6, 2005, Entry on Plaintiffs' Motion for Protective Order to Stay Discovery, the court expressly states that the issue of the Defendants' duty to defend the Plaintiffs in the underlying lawsuits "is to be determined by comparing the allegations of the underlying complaints to the provisions of the policies."  (Entry 2 (citing *Transamerica Ins. Servs. v.  Kopko*, 570 N.E. 2d 1283, 1285 (Ind. 1991).)[4]  Thus, the magistrate judge stayed all discovery pending resolution of the anticipated summary judgment motions.

Mr. Berry's supplemental affidavit presents evidence outside the scope of the four corners of the underlying complaints, evidence clearly not contemplated by the magistrate judge in his Entry, or by the Defendants.  For example, the affidavit offers great detail about Beazer's corporate structure, the means by which it came to acquire Trinity through its acquisition of Crossmann, and its current ownership of Trinity.  (Suppl. Aff. W. Mark Berry ¶¶ 3-12.)  The supplemental affidavit also includes information related to Trinity's payment of settlements and judgments as proof of having "paid amounts far in excess of the total amount of coverage available under **all** of its primary policies combined."  (*Id.* ¶ 14 (emphasis in original).)  According to the affidavit,

---

[4]  The parties apparently agree that Indiana substantive law applies.  The policies were delivered in Indiana, the homes involved in the underlying lawsuits are located in Indiana, and the parties rely on Indiana substantive law.  Thus, the court applies Indiana substantive law.

"Trinity paid a total of approximately $7,865,663 through September 2005 for the defense and investigation of the underlying lawsuits."  (*Id.*)  The affidavit goes into great detail about other insurers of the Plaintiffs and their affiliates, including Liberty Mutual, Lloyd's, Hanover Insurance Co., Massachusetts Bay Insurance Co., and Indiana Insurance Co.  (*Id.* ¶¶ 16-19.)  In offering this sworn testimony, Mr. Berry attaches voluminous documentary support in the form of exhibits, including public and private information regarding how Beazer acquired Trinity, correspondence with opposing parties in litigation (including this litigation), and spreadsheets regarding coverage issues.

In presenting this additional evidence, the Plaintiffs seek to have the court consider evidence beyond the allegations contained within the underlying complaints and policies to make its decision on the summary judgment issues, particularly the main issue of the duty to defend.  This contravenes the magistrate judge's previous ruling, a ruling the Plaintiffs persuaded the magistrate judge to make.  It would be patently unfair to allow the Plaintiffs to rely on these matters after having obtained the stay of discovery.  In addition, its timing is not permissible under the court's local rules.  *See* S.D. Ind. L.R. 56.1.  Therefore, the court finds the contention that the supplemental affidavit and attached exhibits should be stricken is well-taken.  Accordingly, Cincinnati's motion to join in Illinois Union's motion to strike is **GRANTED** and Illinois Union's motion to strike the supplemental affidavit of W. Mark Berry and exhibits thereto is **GRANTED**. As a result, the court will not consider the matters contained in the supplemental affidavit and exhibits thereto in its decision on the pending dispositive motions.

7

However, the court **declines** to strike the related parts of the Plaintiffs' reply briefs. *See Redwood v. Dobson*, 476 F.3d 462, 470-71 (7th Cir. 2007) (finding that motions to strike sections out of briefs serve no purpose because the proper means to contest the accuracy of the other side's factual assertions is in a brief). Because the supplemental affidavit and exhibits thereto are stricken, any factual assertions in Plaintiffs' reply founded solely on these documents will lack evidentiary support and, for this reason, will be disregarded.

## III.  MOTION TO CERTIFY

In staying discovery and stating that the court's evaluation of the duty to defend issue would be governed by the four corners of the complaint alone, the magistrate judge made clear that Indiana state law, and particularly the Indiana Supreme Court ruling in *Transamerica Insurance Services v. Kopko*, 570 N.E.2d 1283 (Ind. 1991), governs this case. *Kopko* holds that an insurance company's "duty to defend is determined solely by the nature of the complaint." 570 N.E.2d at 1285. But according to the Defendants, under more recent Indiana law, the duty to defend may encompass additional facts obtained through an insurer's independent investigation. *See Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 42-43 n.6 (Ind. 2002). Accordingly, Illinois Union requests that prior to a ruling on the motions for summary judgment, the court clarify the issue by presenting the following question to the Indiana Supreme Court, or, alternatively, the United States Court of Appeals for the Seventh Circuit: whether the duty to defend standard governing this case is supplied by *Kopko* or *Freidline*.

8

Courts in this jurisdiction have consistently applied *Kopko* to determine duty to defend issues.  *See, e.g.*, *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 308-09 n.8 (7th Cir. 1998); *Fed. Ins. Co. v. Stroh Brewing Co.*,127 F.3d 563, 565 (7th Cir. 1997).  While, as the Defendants contend, various Indiana Courts of Appeals have struggled with the standards governing the duty to defend, since deciding *Kopko* the Indiana Supreme Court has not deviated from that decision, let alone expressly overruled it.  The reference in *Freidline* upon which the Defendants rely in support of their contention that *Freidline* conflicts with *Kopko* states in part:

> Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend. *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992); *see also Transamerica Ins. Serv. v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).

*Freidline*, 774 N.E.2d at 43.  A closer examination of *Kopko* and *Freidline* reveals that these decisions are not in conflict with each other and that the duty to defend standard set by the Indiana Supreme Court is not as narrow as the Plaintiffs would like.

The court begins its analysis with *Kopko*.  Kopko, the trustee of a land development trust, was named in a lawsuit by persons who had purchased a home on land that later settled, damaging the home.  Kopko was insured by Transamerica, which denied liability and refused to defend Kopko on two grounds.  First because he was sued for deliberate and fraudulent actions, the suit against him did not arise out of an "occurrence" as defined under the policy.  And second because he had sold the subject property prior to the injury, the alienation clause in the policy applied.  The trial court

granted summary judgment in favor of Kopko and against Transamerica, finding a duty to defend, and the court of appeals affirmed. *Kopko*, 570 N.E.2d at 1284.

The Indiana Supreme Court reversed. *Id.* It reasoned that the policy defined an "occurrence" as an "accident . . . neither expected nor intended from the standpoint of the insured." The Court concluded that the damage to the plaintiffs' home could not be an "occurrence" under the policy. *Id.* at 1285. It based this decision on the following facts: Kopko had received a soil report regarding the property in the subdivision that was being developed, well before the plaintiffs' home was built, that there were problems with the sub-soil; a builder purchased a lot in the subdivision and subsequently discovered the soil condition and incurred expenses in preparing the lot for construction; the builder then bought another lot which was the subject of the litigation; the builder was given a credit against the purchase price of the second lot to compensate it for the expenses incurred in correcting the soil conditions on the first lot; the builder built a house on the second lot and sold it to the plaintiffs in the underlying case who sued Kopko because their house settled due to the unstable sub-soil. *Id.* at 1284-85. The Court concluded that the theory of the complaint "sounds entirely in intentional tort and fraud" and thus did not arise from an "occurrence." *Id.* at 1285.

In attempting to establish a duty to defend, Kopko first argued that the underlying complaint sounded not only in deliberate tort and fraud, but also in negligence. *Id.* His efforts were rejected. The Court found that the complaint's use of the word "neglecting" in its context did not necessarily result in an allegation of negligence. Kopko also argued that he testified he "forgot" about the sub-soil condition, so he was at worst

10

merely negligent.  *Id.*  The Court was not persuaded, saying that this attempt to explain his actions might be a defense against the allegations in the underlying complaint, but did not change the theory of the complaint on which the insurer was entitled to rely.  *Id.*  Thus, the Indiana Supreme Court faced a case in which the insured Kopko tried to hypothecate a theory which would bring the plaintiffs' complaint within the insurance policy provisions where the theory hypothecated was inconsistent with the theory of the underlying complaint.  So the Court held that the "duty to defend is determined solely by the nature of the complaint."  *Kopko*, 570 N.E.2d at 1285 (citing *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100 (Ind. Ct. App. 1980)).  Because Kopko's claim that he "forgot" – a defense to the complaint – did not change the nature of the complaint, the Court held that Transamerica had no duty to defend.  *Id.*

The Court also found the facts clearly established that the builder purchased the subject lot before the construction on the plaintiffs' home commenced.  So it was clear that the alienation provision applied.  *Kopko*, 570 N.E.2d at 1285.  In so ruling, the Court said that "[w]hen the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend."  *Id.* (citing *Mallon* and *American States Ins. Co. v. Aetna Life & Cas. Co.*, 379 N.E.2d 510 (Ind. Ct. App. 1978)).  In concluding that the plaintiffs' claim clearly was not covered by the policy, the Court relied on facts presumably beyond the allegations of the underlying complaint such as when the builder purchased the lot from Kopko and when the home construction began.

Turning to *Freidline*, in that case, insured building owners sued their insurer after it refused to defend and indemnify them in a negligence action brought by occupants of

11

the building where carpet was installed, allegedly causing injury.  774 N.E.2d at 38.  The building owners sued to enforce their rights under the insurance policy and alleged bad faith denial of coverage.  *Id.* at 39.  The trial court denied the owners' motion for summary judgment and entered judgment in favor of the insurer based on a pollution exclusion in the policy.  The court of appeals reversed, finding the insurer had a duty to defend and indemnify and that it acted in bad faith.  In an opinion written by Justice Rucker, the Indiana Supreme Court affirmed in part and reversed in part, holding that the pollution exclusion did not apply but that the insurer did not act in bad faith.

The Court summarily affirmed the court of appeals on the pollution exclusion issue – agreeing that the exclusion was ambiguous and construing it against the insurance company.  *Freidline*, 774 N.E.2d at 40, 42.  However, the Court explained that based on that exclusion, the insurer had a rational basis for denying liability, and therefore concluded the insureds had not shown a breach of the duty of good faith.  *Id.* at 42.  In a footnote, the Court noted that the duty to defend is broader than the duty to indemnify, and emphasized that "this principle applies when the risk is insured against."  *Id.* at 42-43 n.6.  The Court continued with the language on which the Defendants rely in seeking certification: "Where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim is patently outside of the risk covered by the policy, the insurer may properly refuse to defend."  *Id.*  As authority for this proposition, the Court cited *Liberty Mutual Insurance Co. v. Metzler*, 586 N.E.2d 897, 901 (Ind. Ct. App. 1992) and *Kopko*, 570 N.E.2d at 1285.

12

Thus, it is evident that the Supreme Court was not overlooking its earlier decision in *Kopko*.  It is reasonable to presume that if the Court in *Freidline* was issuing a duty to defend standard different from that supplied in *Kopko*, it would not have done so in a footnote and without any explanation.  The fact that it did implies that the Court did not consider *Friedline's* analysis of the duty to defend to be inconsistent with *Kopko's*.

Further, the *Metzler* decision cited in *Kopko* was authored by then Judge Rucker, who later authored *Friedline*.  Presumably, as the author of the opinion he had great familiarity with it.  This weighs in favor of the conclusion that the Court did not consider *Friedline* a departure from the duty to defend standard as articulated in *Metzler*.  *Metzler* is faithful to the view that an insurer has the right to make an independent determination that it has no duty to defend.  *See* 586 N.E.2d at 900-02.  The court wrote: "The law in this jurisdiction is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend."  *Metzler*, 586 N.E.2d at 901 (citing, *inter alia*, *Mallon* and *American States Ins*.).  The court held that because the insurer did not protect its own interest by defending the insured under a reservation of rights or obtaining a declaratory judgment as to its obligations, the insurer was collaterally estopped from raising policy defenses the basis for which were decided in the underlying litigation (whether the insured intentionally caused injury).  *Id.* at 902.

Moreover, *Kopko* cited *Mallon*, which had observed that under the traditional view, a duty to defend is determined solely by the allegations of the complaint.  The *Mallon* court added that this view did not mesh well with modern notice pleading where

13

specific factual allegations were unnecessary, and that this created a bind for the insurer.  409 N.E.2d at 1105.  Therefore, *Mallon* held that an insurance company "may go beyond the face of the complaint, and refuse to defend based upon the factual underpinnings of the claim."  *Id.* (citation omitted).

*Kopko* also cited *American States* as authority for the proposition that there is no duty to defend when the nature of the claim is obviously not covered by the policy.  570 N.E.2d at 1285.  The policy at issue in *American States* provided that Aetna had a duty to defend actions alleging injuries within coverage "afforded by this policy."  379 N.E.2d at 518.  The court's discussion of the duty to defend was brief, but it said that the Indiana rule "would appear to require an insurer to examine the allegations of the complaint and make a reasonably complete investigation of the facts, before it can deny coverage and consequent defense."  *Id.*  Thus, both *Mallon* and *American States*, cited by *Kopko*, stand for the proposition that an insurance company may go beyond the allegations of the underlying complaint, and refuse to defend based upon the facts as revealed through its investigation.  It would be quite odd for *Kopko* to cite these duty-to-defend decisions approvingly yet dramatically depart from their rulings with regard to the dimensions of the duty to defend.

Numerous post-*Kopko* decisions from the Indiana Court of Appeals continue to declare that the duty to defend is determined from the allegations of the underlying complaint and the facts known or ascertainable by the insurer after a reasonable investigation.  *See, e.g.*, *Ind. Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1382 (Ind. Ct. App. 1997), *trans. denied*; *Monroe Guar. Ins. Co. v. Monroe*, 677 N.E.2d 620,

14

624 (Ind. Ct. App. 1997), *trans. dismissed*; *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991).  And, although transfer was sought in at least some of these cases, *e.g.*, *Ellison* and *Monroe*, not once has the Indiana Supreme Court stepped in to say that these decisions applied an erroneous standard.  Significantly, *Kopko* itself did not announce that it was mandating a new standard for the duty to defend, which one might expect if it were a drastic departure from a well-established rule.

The court concludes that on close analysis of the case law, there is no real inconsistency between the duty to defend standard of *Kopko* and *Friedline*.  Thus, there is no uncertain controlling question of law to certify to the Indiana Supreme Court or Seventh Circuit.  The motion to certify is accordingly **DENIED**.

Therefore, under the appropriate standard for determining a duty to defend, an insurer is entitled to rely on the allegations of the underlying complaint as well as on those facts known or ascertainable by the insurer through a reasonable investigation. *See, e.g.*, *Kopko*, *Friedline*, and *Acuity Ins. Co. v. Powersource Transp., Inc.*, No. 2:04-cv-82 PS, 2005 WL 2098045, at *4 (N.D. Ind. Aug. 29, 2005).  There are several reasons to allow the insurer to look beyond the allegations of the complaint.  First, this can avoid fraud on the insurer in that the allegations of the underlying suit "could be intentionally framed to force the insurer to appear and defend."  *Acuity*, 2005 WL 2098045, at *5.  This can benefit the insured as well since the insured is not left to "the mercy of its adversary's pleading skills."  *Id.*  "Depending on the case, the adversary may or may not be interested in triggering the insured's coverage."  *Id.*  Moreover, precluding an insurer from looking beyond the underlying allegations could impose on it

15

a risk to which it did not contract.  Stated differently, allowing the insurer to conduct a reasonable investigation and rely on the facts enables it to secure the benefits of its contractual rights.  All of these reasons counsel in favor of allowing an insurer to ascertain the facts underlying a complaint against its insured to decide whether there is coverage under its policy and whether it has a duty to defend.

The stay of discovery in place since July 2005 has frustrated the Defendants in their efforts to ascertain such facts.  The stay of discovery must be revisited and lifted to allow the Defendants to marshal facts to determine whether they owe a duty to defend to the Plaintiffs.  Accordingly, the stay of discovery in this case is now **LIFTED**.  The Magistrate Judge is requested to work with counsel to construct an appropriate discovery schedule.

## IV.    MOTIONS FOR SUMMARY JUDGMENT

The Plaintiffs, in separate motions for partial summary judgment against Cincinnati and Illinois Union, generally request that the court declare that under the insurance policies issued by these Defendants, the Defendants have several and indivisible duties to defend the Plaintiffs against the many underlying lawsuits that are the subject of this action.  The Defendants, as expected, deny that they have duties to defend under the policies at issue, presenting numerous general and policy-specific arguments in support thereof.

16

## A.    Summary Judgment Standard

Construction of a written contract such as an insurance policy is a question of law for which summary judgment is particularly appropriate.  *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind. Ct. App. 1995).  The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## B.    Whether There May Be A Duty To Defend Trinity And Beazer

Preliminarily at issue is whether both Trinity and Beazer are covered as insureds under the policies at issue.  The Defendants contend that they are not, pointing to what they suggest is a confused corporate history between Trinity and Beazer to show that the Plaintiffs have failed to establish that they are entitled to seek coverage.

It is clear to the court that at least one of the Plaintiffs in this case, Trinity, is an insured within the meaning of the Illinois Union policy.  "Trinity Homes LLC" is listed as

17

an insured in the Illinois Union policy, and listed as a defendant in each of the many underlying lawsuits.  Any acquisition related to Beazer did not change that.

In contrast, "Beazer Homes Investments LLC" is not named as an insured on either of the policies at issue.  However, the Plaintiffs allege in their complaint that Beazer is "the successor-in-interest by merger to the named insured under" the policies sold by the Defendants.  (Am. Compl. ¶ 1.)  They also allege that "Crossmann acquired Trinity in October 2000" (*id.* ¶ 8) and that "Beazer is the successor-in-interest by merger to Crossmann" (*id.* ¶ 9).  Perhaps these allegations should have put Illinois Union on notice of a duty to defend not only Trinity, but Beazer as well, because of its alleged status as Trinity's successor-in-interest.  And perhaps these allegations should have put Cincinnati on notice of a duty to defend Trinity because of its acquisition by Crossmann; and perhaps as to Beazer because of its status as Crossmann's successor-in-interest. This question thus arises: is a successor-in-interest to a named insured entitled to the same coverage as the named insured, as the Plaintiffs contend?

The policies issued to Trinity and Crossmann do not contain clauses that expressly extend their coverage to parents, divisions, affiliated companies, or successors-in-interest as additional insureds, as has been the case in other policies. But this does not necessarily mean that the policies specifically exclude such coverage, as they likewise do not contain an exclusion to that effect.  Indeed, several courts have ruled that without a non-assignment clause in place in an insurance policy, a surviving corporation in a merger transaction succeeds to the rights and benefits belonging to the merged corporation under that policy.  *See, e.g.*, *Imperial Enters., Inc. v. Fireman's*

18

*Fund Ins. Co.*, 535 F.2d 287, 292-93 (5th Cir. 1976); *Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.*, 509 F. Supp. 750, 752-53 (E.D. Pa. 1981); *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F. Supp. 573, 575-78 (D. Neb. 1980).

Going even further, some courts allow for the transfer of benefits even when the policy contains a non-assignment clause.  For example, *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.*, 955 F.2d 1353 (9th Cir. 1992), involved a dispute between two insurers regarding payment of defense costs in a product liability suit.  The plaintiffs in the underlying suit, husband and wife, alleged that the wife's consumption of California Coolers during her pregnancy caused their child to suffer from fetal alcohol syndrome.  Prior to the filing of the suit, but after the birth of the child, Brown-Forman Corporation ("Brown-Forman") purchased California Cooler's assets. The purchase agreement provided that California Cooler would indemnify Brown-Forman for product liability claims arising from California Cooler's pre-sale activities and that Brown-Forman would not assume any obligation for such claims.  Brown-Forman tendered the defense to Northern Insurance Company ("Northern"), which insured California Cooler during the last 12 days of the pregnancy.  Northern subsequently tendered the defense to Allied Mutual ("Allied"), which insured California Cooler during several months of the pregnancy.  After the plaintiffs dismissed their suit, Northern sued Allied, seeking contribution for defense costs.  The district court held that though the Allied policy was excluded from the assets assigned to Brown-Forman per the asset purchase agreement, California Cooler's rights under the Allied policy, including the right to a defense, transferred to Brown-Forman by operation of law.

19

The Ninth Circuit affirmed on that issue.  955 F.2d at 1361.  It held that although the Allied policy did not transfer to Brown-Forman by assignment, the benefits under the policy transferred to Brown-Forman by operation of law.  *Id.* at 1357-58.  The court reasoned that because Brown-Forman automatically became liable for California Cooler's pre-sale activities under California's product-line rule of successor liability when it purchased California Cooler's assets, the rights under the policy to a defense and indemnity "followed the liability rather than the policy itself."  *Id.* at 1357.

Similarly, in *Total Waste Management Corp. v. Commercial Union Insurance Co.*, 857 F. Supp. 140 (D.N.H. 1994), the plaintiff, Total Waste Management ("TWM"), filed suit against several insurers, including Maine Bonding & Casualty Co., seeking a declaration that they were obligated to defend and indemnify TWM in an action brought by a third party to recover the cost of cleaning up environmental contamination.  TWM sought coverage under a policy Maine Bonding issued to George West, from which TWM purchased assets.  Maine Bonding moved for summary judgment, arguing that TWM was not an insured under the policy, was not an insured as a result of its purchase of assets from George West, and was not an assignee of the George West policy.  The court denied Maine Bonding's motion because a genuine issue of material fact remained with regard to the issue of whether TWM was George West's successor. 857 F. Supp. at 152-53.

Under this case law, the benefits of the policies under which Trinity or Crossmann is the named insured would seem to transfer to Beazer as a matter of law, if Beazer is truly the successor-in-interest to Trinity and Crossmann.  Moreover, whether

that relationship resulted from a merger, asset purchase, or purchases of stock really would have no import.  The insurers' risk would not have increased because their duties under the policies would apply to Beazer as well as Trinity and Crossmann.  Whether those duties would need to be performed under these circumstances, depends, of course, on the terms of the policies at issue, but the damages incurred are the same regardless.  However, in seeking partial summary judgment, the Plaintiffs cannot merely rest on the allegations in their complaint.  And they acknowledge this, as is apparent from their filing of and reliance on the affidavits of W. Mark Berry as well as his supplemental affidavit.  (*See, e.g.*, Pls.' Mem. Law Supp. Mot. Partial Summ. J. Against Def. Illinois Union Ins. Co., Statement of Material Facts Not in Dispute, No. 9.)

The affidavits accompanying the motions and moving papers make assertions purporting to establish as undisputed facts that Trinity was acquired by Crossmann and that Crossmann merger into what is now known as Beazer.  (*See* Doc. Nos. 163 ¶ 3; 168 ¶ 3.)  The supplemental affidavit expounds upon the assertions in the initial affidavits.  (*See* Doc. No. 205 ¶¶ 3-12.)  As decided, the supplemental affidavit has been stricken and will not be considered for purposes of ruling on the dispositive motions.  So, if the facts attempting to show that Beazer is the successor-in-interest to Trinity and that Trinity and/or Beazer may assert Crossmann's rights under the Cincinnati policy were supported only by the supplemental affidavit, the court would easily conclude that such "undisputed" facts have not been established.  But some assertions in the initial affidavits, as noted, also purport to establish such facts.  The submission of these affidavits which go beyond the allegations of the underlying

21

complaints and the policies at issue were not contemplated by the magistrate judge in his July 6, 2005, ruling staying discovery.  If the court were to consider these factual assertions in ruling on the summary judgment motions, and it *must* in order to find that Trinity was acquired by Crossmann in October 2000 and that Crossmann merged into Beazer in April 2002, it would be patently unfair to the Defendants.  That is, of course, unless the Defendants were allowed discovery on these matters and an opportunity to present their own evidence.  Up until this point they have not had such discovery because all discovery has been stayed since July 2005.  (*See* Ill. Union Ins. Co. Rule 56(f) Aff. ¶¶ 4-5 (expressing need for discovery on the factual contentions contained in the Berry affidavit, including facts regarding a purported merger between the Plaintiffs.)) The Defendants are entitled to the discovery they seek so they can test the assertions in the Berry affidavit (and supplemental affidavit and exhibits thereto as well).[5]

## C.    Cincinnati Insurance

Cincinnati responds to the Plaintiffs' motion for partial summary judgment by arguing that it does not have the duty to defend the underlying litigation.  It contends that such a duty has not arisen because the Plaintiffs did not exhaust their primary insurance policies, particularly the coverage provided by Regent Insurance Company ("Regent"), before seeking coverage from Cincinnati.  While Regent has settled certain

---

[5]  In reply the Plaintiffs claim that certain facts established by the Berry affidavits are undisputed.  Why, of course, they are – at least for now.  Discovery was stayed at the Plaintiffs' urging that discovery was unnecessary and irrelevant to the duty to defend issue.  Plaintiffs advanced other arguments for staying discovery, but the entry granting the stay did not rely on any of those.  Thus, it is not surprising that the Defendants have not marshaled evidence to dispute certain facts asserted by the Plaintiffs.

claims with the Plaintiffs, Cincinnati contends that the approximately $3 million settlement did not result in payment of the maximum amount permitted under the Regent policy limits, which is required before the Cincinnati policy can be tapped.

The Cincinnati policy issued to Crossmann has a $10,000,000 each occurrence limit and a $10,000,000 aggregate limit. (W. Mark Berry Aff. (Doc. No. 163) Ex. A.) The policy provides that "[t]he Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the declarations . . . ." (*Id.* Ex. A § III.5.) The policy provides for coverage as follows:

### A. Insuring Agreement

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" or for an "occurrence" covered by this policy which is either excluded or not covered by "underlying insurance" because of:

1.  "Bodily injury" or "property damage" covered by this policy occurring during the policy period and caused by an "occurrence"; or

2.  "Personal injury" . . . covered by this policy committed during the policy period and caused by an "occurrence".

(*Id.* Ex. A, Cincinnati Policy § I.1.A.) "Underlying insurance" is defined by the policy to mean:

the policies of insurance listed in the Schedule of Underlying Polices and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranged for funding of legal liabilities that affords coverage that this policy covers.

(*Id.* § V.16.) The policy further provides that "if the limits of 'underlying insurance' have been reduced by payment of claims, this policy will continue in force as excess of the

23

reduced 'underlying insurance.'"  (*Id.* § III.4.a.)  And when "the limits of 'underlying insurance' have been exhausted by payment of claims, this policy will continue in force as 'underlying insurance'."  (*Id.* § III.4.b.)

Specifically with regard to the duty to defend, the policy provides:

**C. Defense and Supplementary Payments**

**1.**      We have the right and duty to defend any claim or "suit" against the insured for damages covered by this policy, even if the allegations are groundless, false, or fraudulent, when:

      **a.**      The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

      **b.**      Damages are sought for "bodily injury," "property damage," "personal injury" or "advertising injury" which are not covered by the "underlying insurance" or any other insurance.

. . .

**3.**      We have no duty to . . . defend any claim or "suit" other than those circumstances described in Paragraph **C.1.**

(Aff. W. Mark Berry Ex. A, Cincinnati Policy, §§ I.C.1, I.C.3.)

According to Mr. Berry, the insurance policy underlying the Cincinnati policy from the time Crossman acquired Trinity through January 1, 2002, was issued by Regent (W. Mark Berry Aff. (Doc. No. 163) ¶ 6), Policy Number CCI 0320615 (*id.* Exs. C, D).  The Regent policy was in effect from August 29, 2000, through January 1, 2002.  (*Id.*)  It had an initial policy period of August 29, 2000, to August 29, 2001, and was reissued for the period of January 1, 2001, through January 1, 2002.  (*Id.*)  The Regent Policy has a $1,000,000 "each occurrence limit", a $2,000,000 products-completed operations aggregate limit, and a $2,000,000 general aggregate limit.  (*Id.*)  The "Limits of

24

Insurance" section, similar to that in the Cincinnati policy, provides that the limits of insurance "apply separately to each consecutive annual period and to any remaining period of less than 12 months."  (*Id.*)

The Plaintiffs tendered the underlying lawsuits and numerous other claims to Regent.  According to the Berry Affidavit, Regent made payments of $151,231.87 toward the limits of its policy to indemnify the Plaintiffs for some of these claims.  (Berry Aff. (Doc. No. 163) ¶ 13.)  The Plaintiffs and Regent disputed Regent's obligations under the policy.  Regent agreed to defend the *King* and *Summitt* lawsuits under a reservation of rights but did not provide a defense for the other underlying lawsuits.  (*Id.* ¶ 14.)  According to Mr. Berry, the Plaintiffs and Regent had a good faith dispute over the amount of the limits of the Regent policy – Regent argued that only one set of limits was available; the Plaintiffs argued that the re-issuance of the policy resulted in two sets of limits, resulting in $4,000,000 in aggregate limits.  (*Id.* ¶ 15.)  They eventually reached a compromise and settlement, agreeing that $3,000,000 in addition to the $151,231.87 Regent had already paid would exhaust the Regent policy and extinguish all of Regent's obligations under the policy.  (*Id.* ¶ 16.)  The Settlement Agreement and Mutual Release was executed on May 17, 2005.

At issue here is whether the applicable limits of the underlying insurance including the Regent policy and any other insurance have been exhausted by payment of claims.  While a primary insurer has a duty to defend its insured when the nature of the complaint is covered by the policy, *see Kopko*, 570 N.E.2d at 1285; *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997) ("[A]n insurer has a duty to defend

25

its insured against suits alleging facts that might fall within coverage. . . . [T]he duty to defend is considerably broader than the duty to indemnify."), the situation is different with respect to an excess insurer.  The majority rule is that where an insured has both primary and excess insurance, an excess insurer has no duty to defend the insured until all primary policies have been exhausted.  *See, e.g.*, *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1062 (Ind. 2001) ("the liability of the insurer under an excess insurance clause arises only after the limits of the primary policy are exhausted"); *accord Twin City Fire Ins. Co. v. Burke*, 63 P.3d 282, 287 (Ariz. 2003) ("Until a primary insurer offers its policy limit, the excess insurer does not have a duty . . . to participate in the defense, or to act at all."); *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 700 (Tex. 2000) (rejecting argument that excess insurer's duty to defend arose when liability under excess policy became clear).  The Cincinnati policy itself is clear that Cincinnati has no duty to defend any claim or suit unless, *inter alia*, the applicable limits of the underlying insurance and any other insurance have been exhausted by payment of claims.  Moreover, the policy further provides that if the limits of underlying insurance are reduced by payment of claims, then the Cincinnati policy will continue in force as excess of the reduced underlying insurance.  It is only when the underlying insurance has been exhausted that the Cincinnati policy will continue in force as underlying insurance.

A rule that an excess insurer's duty to defend is determined by the nature of the complaint would read critical language right out of the excess insurance contract.[6]  The question of whether a claim for damages is covered under an excess policy depends on the answers to two questions.  First, whether the underlying policy or policies have been exhausted according to the terms of the excess policy and, second, if so, whether there is coverage for the claim under the excess policy.  The Plaintiffs concede as much in recognizing that the duty to defend under the excess policy issued by Illinois Union is not triggered until the limits of the underlying policy have been exhausted.  (Pls.' Mem. Supp. Mot. Summ. J. Ill. U. 19 n.3 ("Because the Policy has not yet been exhausted, this Motion only addresses Illinois Union's defense obligations under the Policy, although the duty would be triggered similarly under the Excess Policy upon exhaustion of the Policy.")).

When the issue is whether an excess insurer has a duty to defend, a resort solely to the underlying complaints and policy provisions is not sufficient.  Other matters, for example, whether the underlying policy or policies have been exhausted, are relevant to the duty to defend.  While the Plaintiffs have asserted they provided any information reasonably relevant to the insurers' coverage obligations to them, Cincinnati has offered the affidavit of Troy Reichers, Associate Manager of Complex Claims at Cincinnati, indicating that further discovery is necessary relative to its alleged duty to defend and exhaustion of Plaintiffs' underlying insurance.  For example, the Plaintiffs' assert that the primary policy underlying the Cincinnati policy and listed in the Schedule of Underlying

---

[6]  Even if not in all cases – the terms of excess policies vary – this is the situation here.

Policies in the Cincinnati policy from the time of Crossmann's acquisition of Trinity (October 2000) through January 1, 2002, was the Regent policy. They contend that based on their agreement with Regent, the Regent policy has been exhausted. Cincinnati contests whether the Regent policy and the Plaintiffs' additional underlying insurance has been exhausted.

The court finds that the evidence does not demonstrate that there is no genuine issue of material fact. A material issue remains on whether the applicable limits of the Regent policy have been exhausted by payment of claims (and whether the applicable limits of any other insurance have been exhausted). Therefore, the Plaintiffs are not entitled to a judgment as a matter of law that Cincinnati has a duty to defend them in the underlying lawsuits and their motion for partial summary judgment is **DENIED**. Cincinnati will be allowed to have discovery to determine whether it has a duty to defend.

**D.     Illinois Union Insurance**

Illinois Union responds to the Plaintiffs' motion for partial summary judgment by offering both generalized and particularized grounds for why it owes no duty to defend the thirteen underlying lawsuits. It generally contends that the policy language does not impose a duty to defend under these circumstances and, even if it did, the motion could not move forward because the Plaintiffs have failed to include all indispensable parties to the action.

Preliminarily, Illinois Union argues that the court may not proceed to decide the motion for partial summary judgment against it because the Plaintiffs have failed to add indispensable parties to their action, as Federal Rule of Civil Procedure 19 requires. Illinois Union suggests that because the policy period ended on May 1, 2002, and yet the Plaintiffs seek coverage for damage that occurred into 2004, whatever insurers covered the Plaintiffs from May 1, 2002, onward must be included in this action. It names those insurers as Liberty Mutual Insurance Company and certain "Lloyds & British Cos." (Resp. 20.)

The determination of whether Illinois Union has a duty to defend the underlying litigation is in no way dependent on the addition of these certain insurers to this action. At issue relative to the motion for partial summary judgment against Illinois Union is the policy period set forth in the Illinois Union policy alone—December 31, 2001, through May 1, 2002. Anything beyond the policy period is irrelevant. While this means that the Plaintiffs cannot seek damages from other insurers unless they are added as parties to this action or named in a separate action, it certainly does not mean that the Plaintiffs' claims against Illinois Union cannot proceed as currently set forth in the amended complaint. The court can make a fair determination of Illinois Union's duties under the policy and policy period at issue by evaluating the complaint and the claims set forth therein in their current form.

The Insuring Agreement in the Illinois Union policy provides in part as follows:

**1. Insuring Agreement**

29

  **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

. . .

  **b.**  This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)**  The "bodily injury" or "property damage" occurs during the policy period.

(Policy § I.A.1.a, b.)  The policy limits are $1,000,000 per each occurrence with a $1,000,000 general aggregate limit.

  The Plaintiffs request that the court declare that based on the terms of the policy, Illinois Union has a several and indivisible duty to defend them against the thirteen underlying lawsuits that are the subject of this action.  They contend that the allegations contained within the four corners of the underlying complaints support this conclusion. Illinois Union responds that the Plaintiffs ignore a subsequent endorsement to the policy that changes its duty to defend.  It specifically points to the Contractors Self Insured Retention ("SIR") Endorsement, which states in pertinent part:

  The insurance provided by COVERAGE A, BODILY INJURY AND PROPERTY DAMAGE LIABILITY . . . and any other coverage provided by any endorsements included in this [policy] are subject to the following provisions:

  A.  The Limits of Insurance . . . apply only in excess of the insured's "Self-Insured Retention" as stated below. . . . [T]he terms of this endorsement supersede and control any other provisions or terms

of the policy in the event of conflict with any provisions elsewhere in
the policy.

"Self-Insured Retention" = $ 50,000.00            per occurrence. . . .

. . .

B. 1.   We, and/or our authorized representative acting on our behalf, have
the right but not the obligation to assume charge of the defense
and/or settlement of any claim or 'suit.' . . . The duty to defend
provision of the Commercial General Liability Coverage Form will
apply only in the event that one of the first two "Self Insured
Retentions" . . . of this endorsement is exhausted by actual
payment according to the terms of this endorsement.

2.   In the event that the "Self-Insured Retention" is not exhausted by
actual payment according to the terms of this endorsement and if
we elect not to exercise our right to assume charge of the defense .
. . the Named Insured has the obligation to provide adequate
defense . . . of any claim or "suit" . . . .

(Berry Aff. (Doc. No. 168), Ex. A, SIR Endorsement, § A, B.)  Illinois Union argues that

this language supersedes any duty to defend set forth in the policy, and therefore, it

may, but is not required, to defend the underlying litigation against the Plaintiffs.

The SIR Endorsement lists only one self-insured retention: $50,000 per

occurrence; the endorsement has no aggregate self-insured retention for all

occurrences.  The SIR Endorsement states that the self-insured retention "shall not be

satisfied by" *inter alia*, "payments made on behalf of the insured by any other insurer,

person or entity."  (*Id.* § B.4.)  Therefore, the insured must exhaust the $50,000 self-

insured retention for each occurrence by actual payment by the insured in order for the

duty to defend provision to apply.

A self-insured retention endorsement "effectively transforms the policy from a

primary policy into an excess policy covering only amounts in excess of the self-insured

retention." 2 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 13.13[a] (Aspen Publishers 13th ed. 2006). Thus, like an excess insurer, an insurer providing coverage in excess of a self-insured retention has no duty to defend until the self-insured retention is exhausted in accordance with the terms of the policy. *See, e.g.*, *Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 495 (Ind. Ct. App. 2004) *(*"In a policy with a retained amount, the insurer has no claims handling responsibility, particularly with respect to claims not exceeding the retained amount."); *Nabisco, Inc. v. Transp. Indem. Co.*, 192 Cal. Rptr. 207, 209-10 (Cal. Ct. App. 1983) ("A self-insurer is likewise responsible for the defense costs attributable to the extent of its self-insured retention."); 1 Ostrager & Newman, *Handbook on Insurance Coverage Disputes* § 6.04.

Illinois Union asserts that the Plaintiffs have not contested that it has no duty to defend a claim or suit unless and until the $50,000 SIR has been exhausted as to each occurrence. This is correct: They have not. Illinois Union acknowledges that Indiana courts have not yet decided how to determine the number of occurrences under a self-insured retention. Neither party points to any analogous Indiana case addressing the number of occurrences that arise from an alleged defective construction technique involving numerous claims and properties in different projects over the span of several years. Illinois Union, not surprisingly, maintains that the allegations of the underlying lawsuits show that multiple alleged occurrences are at issue. In contrast, Plaintiffs argue that for purposes of determining the duty to defend, the underlying lawsuits constitute a single occurrence. Resolution of this question will be left for another day.

32

Illinois Union is correct that the evidence fails to show that there exists no genuine issue of any material fact. This is because the Plaintiffs' moving papers fail to assert sufficient facts – let alone back up those facts with citations to admissible evidence – to establish that they have exhausted the $50,000 per occurrence SIR by actual payment in accord with the endorsement's terms. And even if they had, Illinois Union would be entitled to test their factual assertions through discovery. It is fairly easy to claim that a fact is undisputed when the opposing party has not had discovery on the matter asserted.

The Plaintiffs attempt to present evidence on the SIR retention in their reply brief with the supplemental affidavit of W. Mark Berry and attached exhibits. But these have been stricken. Moreover, Illinois Union offers the affidavit of Donald P. Smith who supervises claims and coverage litigation for Illinois Union to support a Rule 56(f) request. (Illinois Union Ins. Co. Rule 56(f) Aff. ¶ 1.) Mr. Smith states that Illinois Union has been unable to discover facts to determine whether the insured has exhausted the self-insured retention of its policy because of the stay in discovery. (*Id.* ¶ 7.) He continues by stating that Illinois Union needs discovery on, *inter alia*, the payments made by the insured and its other insurers to identify witnesses with knowledge about those issues, the facts of the individual claims in the *Colon* action, and the involvement of other insurers of the Plaintiffs in the underlying lawsuits. (*Id.* ¶ 9, 11.)[7]

---

[7] Many assertions in Mr. Berry's supplemental affidavit purport to address these matters identified in the 56(f) affidavit.

33

The court finds that the Plaintiffs are not at this stage entitled to a judgment as a matter of law as to Illinois Union's alleged duty to defend them in the underlying lawsuits.  Their motion for partial summary judgment is therefore **DENIED**.  Illinois Union will be allowed to have discovery to determine whether it has a duty to defend.

## V.    CONCLUSION

For the foregoing reasons,

Plaintiffs' Motion for Partial Summary Judgment against Cincinnati Insurance (Doc. No. 162) is **DENIED**;

Plaintiffs' Motion for Partial Summary Judgment against Illinois Union Insurance (Doc. No. 167) is **DENIED**;

Plaintiffs' Motion for Partial Summary Judgment against American Employers' Insurance (Doc. No. 170) is **DENIED AS MOOT**;

Illinois Union Insurance's Motion to Certify Question, or, in the Alternative, to Certify Interlocutory Appeal (Doc. No. 179) is **DENIED**;

American Employers' Insurance's Cross-Motion for Partial Summary Judgment (Doc. No. 188) is **DENIED AS MOOT**;

Illinois Union's Motion to Strike Supplemental Affidavit of W. Mark Berry And Related Parts of Plaintiffs' Reply (Doc. No. 208) is **GRANTED IN PART** - in that the

court strikes the supplemental affidavit and exhibits thereto, but declines to strike parts of the reply briefs;

Motion for Joinder of American Employers' Insurance in Illinois Union's Motion to Strike (Doc. No. 209) is **DENIED AS MOOT**; and

Motion for Joinder of Cincinnati Insurance in Illinois Union's Motion to Strike (Doc. No. 213) is **GRANTED**.

The stay of discovery in this case is now **LIFTED**.  The Magistrate Judge is requested to work with counsel to construct an appropriate discovery schedule.

This court has not ruled that Illinois Union and Cincinnati Insurance have no duty to defend the Plaintiffs in the underlying lawsuits.  This entry concludes merely that the Plaintiffs are not entitled to summary judgment on those claims based on the present record.  The landscape may change once the Defendants are allowed discovery.  If presented with successive motions for partial summary judgment, it may be that the court would find a duty to defend.  But such a decision must await another day.

ALL OF WHICH IS ENTERED this 30th day of March 2007.

_____

John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

Steven M. Badger
McTurnan & Turner
sbadger@mtlitigation.com

Benjamin Brian Belcher
Iwan Cray Huber Horstman &
VanAusdal LLC
bbb@iwancray.com

Stephen Robert Bishop
Cozen O'Connor
sbishop@cozen.com

LaDonna L. Boeckman
Iwan Cray Huber Horstman &
VanAusdal LLC
llb@iwancray.com

Heather Lindamood Buchanan
Cozen O'Connor
sbishop@cozen.com

Martin Jacob Gardner
Gardner & Rans, PC
mgardner@gardnerandrans.com

Scott A. Harkness
Norris Choplin & Schroeder LLP
sharkness@ncs-law.com

James K. Horstman
Iwan Cray Huber Horstman &
VanAusdal LLC
jkh@iwancray.com

Michael D. Huber
Iwan Cray Huber Horstman &
   VanAusdal LLC
mdh@iwancray.com

Bruce L. Kamplain
Norris Choplin & Schroeder LLP
bkamplain@ncs-law.com

Lee B. McTurnan
McTurnan & Turner
lmcturnan@mtlitigation.com

Ranse Murphy Partin
King & Spalding LLP
rpartin@kslaw.com

Stephen J. Peters
Harrison & Moberly, LLP
speters@h-mlaw.com

Julianna Marie Plawecki
McTurnan & Turner
jplawecki@mtlitig.com

Michael M. Raeber
King & Spalding, LLP
mraeber@kslaw.com

Kristy Marie Rans
Gardner & Rans
krans@gardnerandrans.com

Mark R. Smith
Smith Fisher Maas & Howard
msmith@smithfisher.com

Emily R. Sweet
King & Spalding
esweet@kslaw.com

Joshua Wall
Cozen O'Connor
jwall@cozen.com